**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond**

| | | |
|---|---|---|
| STEPHEN E. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:17-cv-742 |
| | ) | |
| KIMBERLY L. DARDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PATRICIA**
**WATSON'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, Patricia Watson, by counsel, states the following as her reply memorandum in support of her motion for summary judgment:

**I.      Introduction and Argument**

Watson has moved this Court for summary judgment on four grounds: (1) King's arrest and prosecution were founded upon probable cause as a matter of law; (2) there are several intervening and superseding causes of King's arrest; (3) King's state law claims are barred under the Virginia common law doctrine of absolute immunity; and (4) Watson is qualifiedly immune under federal law because there is no clearly-established law showing that King's arrest or prosecution was unlawful.

In his opposition briefs, King is emphatic that a triable issue of fact exists as to whether Watson acted with the requisite scienter under Virginia common law.[1] Watson has not sought summary judgment on this issue. Indeed, "summary judgment is seldom appropriate in cases in

---

[1] Whether couched in terms of "unlawful seizure" or "malicious prosecution," there is no scienter associated with a Fourth Amendment claim. *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Indeed, even under Virginia common law, there is a permissive inference of malice arising from a lack of probable cause. *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 522 (E.D. Va. 2010).

which particular states of mind are decisive as elements of a claim or defense." *Tenax Corp. v. Tensar Corp.*, 743 F. Supp. 1204, 1208 (D. Md. 1990). Thus, the question presented by this motion is simply whether there is a sufficient conflict in the evidence to create a triable issue of fact with respect to the remaining elements of King's claims. As the non-movant, it is King's burden to "affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial." *Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 790 (E.D.N.C. 2015) (*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). King has utterly failed to address the dispositive issues raised in Watson's motion, much less identify specific evidence that rebuts the overwhelming and conclusive evidence of probable cause and lack of causation attributable to Watson.

Instead, King relies on misdirection. He points to numerous items in the record that he contends are suspicious or irregular. Even if this Court adopts the patently unreasonable inferences that King draws from these innocuous items of evidence, these facts fail to "do more than simply show there is some metaphysical doubt" with respect to essential elements of and defenses to King's claim: probable cause, causation, and immunity. *Matsushita*, 475 U.S. at 586.

### a. King's Evidence Offered in Opposition to Watson's Motion for Summary Judgment

In short, these are the core factual contentions raised by King in opposition to Watson's motion for summary judgment:

- Watson's letter to the Virginia State Police misstates the operative law. King offers no response to the unrebutted testimony of Darden and Doucette that they were not in any way misled by this misstatement, or the fact that the charging documents reflect a correct understanding of the law.

• There was a map inserted between pages 93 and 94 of the copy of the Preliminary Hearing Transcript handed off to Darden. King fails to show how this map is *material*. Ironically, he agrees that the map accurately depicts Cherry Tree Farm and 131 Lily Lane in North Carolina, and that he testified that he lived in North Carolina on February 27, 2015. Thus, it is undisputed that the material aspects of this map are true.

• Internet printouts of King's North Carolina voter information are dated June 4, 2015 and June 18, 2015. Again, King does not contend that there is anything inaccurate about the information presented in those documents, including the fact that he voted in North Carolina as a North Carolina resident 364 days prior to the 2015 General Election in Virginia, in which he sought to run for public office.

• King asserts that the record is unclear as to whether Doucette received a copy of Darden's recorded King interview prior to King's arrest. King makes no effort to show how the date that Doucette received this recording is *material*. To make this showing, King must show how consideration of the interview would have negated probable cause. King notes that he told Darden about a March 2013 lease. But King also told Darden that he "moved back" to North Carolina following his entry into that lease. Moreover, King concedes that he reestablished residency in North Carolina following March 2013, which he must have done to lawfully vote in North Carolina in November 2014.  *See* N.C. Gen. Stat. §§ 163A-841. Thus, the March 2013 lease is not relevant to the time period at issue in this lawsuit.  Finally, King is heard on the audio recording stating that he moved back (to Virginia) on October 1, 2014, some 34 days before he voted in the North Carolina general election on November 4, 2014.

• A motion to appoint a special prosecutor is date stamped by the clerk on July 21, 2015. There is an Order of Appointment signed by Judge Sharrett on July 21, 2015 *nunc pro tunc*

3

July 16, 2015. This Order appoints Michael Doucette as Special Prosecutor. No criminal action had been initiated as of July 21, 2015. On September 24, 2015, a copy of that Order was placed in the record of the criminal proceedings against King, ostensibly to show Doucette's credentials as Special Prosecutor. King insinuates a grand conspiracy related to the handling of these records or the appointment process of Doucette, but he has failed to articulate how King's perceived irregularities with these documents should affect this Court's analysis of the issues presented in Watson's motion.

- King asserts that Allen and Watson offer differing accounts of whether Allen made a formal complaint to Watson at Logan's Diner or later in a phone call to Watson at her office. Again, this is a distinction without a difference. King does not articulate how this immaterial fact should affect this Court's evaluation of the evidence of probable cause, causation, and immunity. Either way, no evidence exists to contradict the fact that the formal complaint was initiated by Allen.

*     *     *     *     *

Significantly, King has failed to connect the dots for the Defendants or the Court as to how the foregoing facts, either individually or in their totality, establish (i) that probable cause is lacking in this case or (ii) that causation for the arrest and prosecution is lacking. Indeed, King's opposition to Watson's motion for summary judgment contains no discussion of probable cause or causation whatsoever. Instead, King's argument focuses entirely on whether Watson is entitled to absolute prosecutorial immunity under *federal* law. Watson has not sought summary judgment on the issue of absolute immunity under federal law.

The November 4, 2014 North Carolina Authorization to Vote Form (the "ATV Form') is an immovable object in this lawsuit. That form establishes beyond cavil that King voted in North

4

Carolina as a North Carolina resident 364 days prior to the 2015 General Election in Virginia. He certified his residency in North Carolina on that document and failed to list any change of address. King fails to mention or discuss the ATV Form in his opposition. There are numerous, additional items of evidence corroborating the commonsense conclusion held by Darden and Doucette that King was not a resident of Virginia 365 days prior to the 2015 General Election, including (i) the September 17, 2014 civil complaint filed by King himself in which  he affirmatively stated that he was a resident of North Carolina; (ii) the February 27, 2015 Preliminary Hearing Transcript in which King testified that "I live right across the road from one of the co-defendants" which address is 131 Lily Lane, Gaston, North Carolina; (iii) King's own statement to Darden that he "moved back" to North Carolina in 2013; among other things. The only evidence that King was a resident of Virginia prior to November 3, 2015 is his own self-serving statement to that effect made to Darden, which his father and purported roommate failed entirely to corroborate.

**b.  Probable Cause**

In short, it is undisputed that King swore in his answer to Question 3 on the Certificate of Candidate Qualifications that he had been a resident of Virginia for one year prior to the November 3, 2015 General Election. But the undisputed evidence considered by Darden and Doucette showed that King lived in North Carolina on November 4, 2014 and February 27, 2015. In drawing reasonable inferences from this evidence, Darden and Doucette's conclusion that King falsified the Certificate of Candidate Qualifications was supported by substantial evidence. It cannot reasonably be argued that King's arrest and prosecution occurred without probable cause. Indeed, if King's self-serving statements were sufficient to dispel probable cause, then any person subject to investigation could inoculate themselves against arrest by simply contradicting the objective, inculpatory evidence uncovered by law enforcement. The inculpatory statements in this case are,

ironically, King's own sworn statements made to a North Carolina Precinct Official and to a General District Court.

The issue in this case is not whether sufficient evidence existed to convict King, but rather whether his seizure was founded upon probable cause. "[R]easonable law enforcement officers need not resolve every doubt about a suspect's guilt before probable cause is established." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The probable cause inquiry is made considering the totality of the circumstances. The Court does not engage "in the sort of 'divide-and-conquer analysis' that treats each action by a defendant in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments." *United States v. Perkins*, 363 F.3d 317, 327 (4th Cir. 2004). Because King has not shown how Darden's reasonable assessment of the fruits of her independent investigation failed to establish probable cause, Watson is entitled to summary judgment as a matter of law.

### c. Causation

Moreover, there are several superseding, intervening causes of King's arrest and prosecution, including the independent probable cause determinations made by Darden, Doucette, the Magistrate, the General District Court, the Grand Jury, and the Circuit Court. It is further undisputed that Watson had no personal involvement in the prosecution of King. The matter was independently investigated by Darden and prosecuted by Doucette. No causal connection exists between Watson and any alleged denial of King's constitutional rights. See *Vinnedge v Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). King has simply ignored these issues in his opposition briefs. Because he has not shown a triable issue of fact on the question of causation, Watson is entitled to summary judgment.

### d. Common Law Prosecutorial Immunity and Qualified Immunity

Watson has asserted common law absolute immunity in defense of the state law claims. King cites only to the federal law of absolute immunity in opposition. As articulated in Watson's memorandum in support of this motion, absolute prosecutorial immunity under Virginia common law is broader than its federal counterpart. King has offered no response to the issue of state law immunity. Likewise, Watson has asked this Court to find that she is qualifiedly immune under federal law on the grounds that there is no clearly-established law giving Watson notice that it is unlawful for her to refer a complaint of election fraud to the VSP, as she is dutybound to do under Virginia Code § 24.2-104. King has not come forward with any clearly-established law or offered any rebuttal whatsoever to this issue.

This case should not be tried before a jury. The summary judgment record reflects that King has less than a scintilla of evidence with respect to certain, essential elements of his claims. The question of probable cause is supported by substantial, undisputed evidence.

### II.   Objections to King's Exhibits (ECF No. 55-1 through 55-28)

King has incorporated the entirety of his response to Darden's motion for summary judgment into his opposition to Watson's motion for summary judgment. (ECF Nos. 55 & 55-1 through 55-28.) What follows is a point-by-point response to the exhibits and factual averments contained in that brief. Where there is overlap between ECF No. 55 and King's opposition to Watson's motion for summary judgment, ECF No. 61, counsel will rely on this response for the sake of brevity. Thus, pursuant to Rule 56(c), Watson objects to the exhibits and statement of facts appearing in King's Memorandum in Opposition to Motion for Summary Judgment (ECF Nos. 55 & 55-1 through 55-28) for the following reasons:

1.      <u>King Exhibit Nos. 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 13A, 14A, 17, 18, and 19</u>. No objection.

2.      <u>King Exhibit Nos. 5 & 6</u> (Email between Vicki Halasz, CCR, RPR, and Stephen King, June 28, 2016; Letter from JoAnne Connor, Clerk, addressed "To Whom It May Concern," Mar. 1, 2019). Watson objects to these written communications on the grounds that they are irrelevant and immaterial to the issues presented in Watson's motion for summary judgment. Whether the Bing map depicting Cherry Tree Farms is included in the original Preliminary Hearing Transcript dated February 27, 2015, and whether that map appeared between pages 93 and 94, is not material to any fact issue in this case. The material facts are (i) that both Cherry Tree Farms and 131 Lily Lane are in North Carolina and (ii) that King testified 250 days before the General Election in Virginia that he (present tense) "lives across the street" from 131 Lily Lane at Cherry Tree Farms in North Carolina. King fails entirely to rebut or contest these facts. Watson further objects on the grounds that these documents contain hearsay without any exception.

3.      <u>King Exhibit No. 14</u> (Letter from M. Doucette to D. Brown, Sept. 16, 2015). King apparently believes that this letter has impeachment value. Though this document reflects that Doucette's recollection of his receipt of the recorded King interview as of September 16, 2015 is not the same as Doucette's recollection as of Feb. 22, 2019, Watson denies that this discrepancy is material. While this document may be admissible in a trial settling to show that Doucette's memory of this fact may be (or, have been) inaccurate, this issue is immaterial and irrelevant to the issues presented in Watson's motion for summary judgment. Further, King does not show, and cannot show, how any information contained in the audio recording negates probable cause or affects the causation argument raised by Watson. The admissibility of this document is limited to its impeachment value; it is inadmissible for the truth of the matters asserted therein by a non-party under the rule against hearsay.

4.  <u>King Exhibit No. 15</u> (Letter from M. Doucette to D. Brown, Aug. 12, 2015). Watson incorporates her objection to King Exhibit 14 by reference. Watson further objects on the grounds that this letter is hearsay without any exception.

5.  <u>King Exhibit No. 16</u> (Dep. of Darden 181–82). Watson objects on the grounds that Darden's testimony regarding whether she conducted a "rebuttal interview" is neither admissible nor relevant to the fact issues in this case. King has not identified any expert testimony or legal authority that would compel Darden to conduct a "rebuttal interview" prior to seeking an arrest warrant. To the contrary, the common law and constitutional standard of care governing Darden's initiation of criminal proceedings against King is probable cause. Probable cause is determined based on the historical facts "viewed from the standpoint of an objectively reasonable police officer." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Whether Darden could have taken further investigatory steps prior to arresting King, and whether such steps would have prevented King's arrest and prosecution, is irrelevant to this inquiry. Moreover, it is confusing, misleading, and unfairly prejudicial to argue or insinuate that Darden had a legal obligation to conduct a "rebuttal interview," when no expert or Court has drawn that conclusion.

6.  <u>King Exhibit No. 20</u> (Verizon Wireless Call Detail, "Page 5 of 6"). Watson objects to this exhibit on the grounds that (i) it contains hearsay without any exception; (ii) it is incomplete; and (iii) King has not subpoenaed or produced the complete set of cell phone records and cannot authenticate this document. Watson further objects on the grounds that this document is irrelevant and immaterial to the issues presented in this motion because King does not challenge the substance of Darden's conversation with Charles Purdy. Whether the call was two minutes or two hours, the legally-operative facts are unrebutted.

7.      <u>King Exhibit Nos. 21, 22 & 23</u> (Excerpts from King's testimony during his criminal trial on Nov. 6, 2015). King's own testimony during his criminal trial on November 6, 2015 is hearsay. Under Rule 801(d)(2), a statement by a party is non-hearsay when a statement uttered by a party is offered *against that party*. King's own testimony at his criminal trial cannot be offered as evidence against Watson and Darden under the rule against hearsay, and his testimony is not subject to any exception. King's testimony is also irrelevant and immaterial to the issues presented in Watson's motion. <u>First</u>, Exhibit 21 contains King's testimony regarding his March 2013 lease agreement with his father. Recall, King told Darden that he moved back to North Carolina after signing that lease agreement, and that he did not resume his residence in Virginia until October 1, 2014. He also filed a lawsuit in North Carolina on September 17, 2014 in which he stated in the first paragraph of the Complaint that he was a resident of North Carolina. These facts are undisputed. Thus, any prior lease agreements King may have entered into in Virginia have no bearing on Darden or Doucette's investigation into whether King was a Virginia resident on or before November 3, 2014.

<u>Second</u>, Exhibit 22 contains testimony from King attempting to spin his prior testimony under oath on February 27, 2015 that he "lives across the street" from 131 Lily Lane. Even if King's dubious contentions regarding this former testimony were reasonable, the Supreme Court has instructed that, in evaluating whether historical facts constitute probable cause, the Court must "give due weight to inferences drawn from those facts by . . . local law enforcement officers." *Ornelas v. United States*, 517 U.S. 593, 699 (1996), *followed for this proposition*, *United States v. Kelly*, 592 F.3d 586, 592 (4th Cir. 2010). Thus, King's own self-serving spin, stated for the first time nine months after the fact at his criminal trial, attempting to interpret his February 27, 2015

testimony, fails to establish a genuine factual dispute as to whether Darden or Doucette's own rational inferences drawn from that testimony establishes probable cause.

Third, Exhibit 23 contains testimony from King stating that he did not provide Darden with exculpatory evidence because "that was her job." King then testifies that Darden "would not communicate with us," but no foundation is established for this testimony. King states that he did not personally do anything to contact Darden. According to King's deposition testimony, neither King nor his attorney even had the means of contacting Darden until October 2015. (King Dep., Exhibit A, at 122:6–24.) Moreover, when King was encouraged by Doucette to provide any exculpatory evidence to Doucette that may assist in evaluating whether to proceed with the criminal charge, King ignored Doucette's request. (King Dep., Exhibit A, at 125:7–17.) Regardless, whether the historical facts known to Darden establish probable cause as a matter of law neither depends on how many times she spoke to King, nor what King would have done if she had interviewed him a second time.

8.      King Exhibit No. 24 (Email from K. Edwards to K. Allen). This document contains hearsay without any exception, and it is irrelevant.

9.      King Exhibit Nos. 25 & 26 (NCIC Reports re: King). These documents reflect that Doucette and Watson's offices pulled NCIC Reports regarding King, who had been arrested and was being prosecuted in Greensville County, on July 24, 2015 and July 29, 2015, respectively. King was arrested on July 28, 2015 and arraigned the following Monday, August 3, 2015. King fails to explain why the report from the Greensville County Commonwealth's Attorney's Office, pulled on July 29, 2015, is remarkable. Similarly, Doucette met with Darden on July 24, 2015 to discuss this case. It is similarly unsurprising that Doucette pulled an NCIC report the same day. These exhibits are irrelevant.

11

10.   <u>King Exhibit No. 27</u> (VSP Facts & Figures Report 2015). This document is hearsay and it is irrelevant. "A person cannot, by the adoption of private rules, fix the standard of his duty to others." *Va. Ry. & Power Co. v. Godsey*, 117 Va. 167, 169, 83 S.E. 1072, 1073 (1915); *accord Pullen v. Nickens*, 226 Va. 342, 350, 310 S.E.2d 452, 456 (1983). "Private rules may require of employees less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party." *Godsey*, 117 Va. at 169, 83 S.E. at 1073. *See also Virginia v. Moore*, 553 U.S. 164 (2008) (holding that a state law prohibiting arrest for misdemeanor traffic offenses did not invalidate a constitutional seizure). Thus, Virginia State Police guidance documents do not establish the common law or constitutional standard of care in this case, and these documents should not be considered in evaluating whether King's arrest and prosecution was founded upon probable cause.

11.   <u>King Exhibit No. 28</u> ("Darden's efforts to have North Carolina prosecute King"). These documents are irrelevant and immaterial to the issues presented in Watson's motion for summary judgment and are replete with hearsay without any exception.

**III.   Objections and Responses to King's Statement of Facts (ECF No. 55)**

Local Rule 56(B) provides that a party opposing summary judgment must include a "specifically captioned section listing all material facts as to which it is contended there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." King's reply to Darden's motion for summary judgment does not contain any such specifically-captioned section but does contain six (6) pages of facts under the header "Introduction." Watson will assume that this section constitutes King's statement of genuine issues. As will be discussed in greater detail below, King has failed to offer any evidentiary support for several key contentions appearing in this statement of facts.

Local Rule 56(B) further provides that "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Most of Watson's statement of undisputed material facts is therefore conceded by King.

Watson specifically objects, in numbered paragraphs corresponding to King's numbered paragraphs beginning at ECF No. 55, page 5, to King's statement of genuine issues as follows:

2.     Watson objects on the grounds that King has failed to support the statement "thereby misleading the VSP" with admissible evidence establishing such proposition. The summary judgment record contains uncontroverted evidence from both Doucette and Darden establishing that they were neither influenced nor motivated by an incorrect understanding of the law, and the charging documents reflect the correct legal standard. (Watson's SOUF ¶¶ 45–48, ECF No. 47.)

5.     Watson objects that King mischaracterizes the record related to the sources of evidence in the Commonwealth's Attorney's file in this matter. Watson's unrebutted testimony is that she did not personally obtain the evidence related to King and that she did nothing to investigate King prior to receiving the Allen complaint. *See* (Watson Memo., ECF No. 47, at 9 n.7; Watson Exhibit C, at 52:1–7, 169:2–22.) King has come forward with no contrary evidence. Yet King repeatedly attributes the generation of these documents to Watson when there is in fact no evidence showing Watson's personal involvement. For instance, King notes that a Bing map depicting Cherry Tree Farms appears between pages 93 and 94 of the February 27, 2015 Preliminary Hearing Transcript. There is no evidence establishing when or how that map made its way into the transcript. King notes that the NC Public Voter Information printouts are dated June

4, 2015 and June 17, 2015. Again, there is no chain of custody for those records establishing how those records were obtained, who printed them, or under what circumstances.

Most significantly, King does not quarrel with the substance of these records. King does not dispute that the information contained in them is true. Thus, his mischaracterizations of the record do not show a *genuine* or *material* factual dispute sufficient to defeat summary judgment. For instance, King asserts that "Watson['s] intent in providing the excerpt with the map was to influence Darden." (ECF No. 55, at 7.) Even if it could be shown that Watson placed that map in the transcript, this fact is immaterial because King does not assert that there is anything false or misleading about the map. The map is relevant only because it shows that King's farm is across the street from 131 Lily Lane in North Carolina. King does not dispute this incontrovertible fact. Thus, if Darden or Doucette reviewed the map and concluded that 131 Lily Lane was in North Carolina, she was not misled, because that fact is both true and corroborated in the Preliminary Hearing Transcript.

6.      King states, "All of the questionable evidence listed above originated from Watson." King does not cite to any evidence in the discovery record to support this contention because there is no such evidence. Watson accordingly objects to this statement on the grounds that it is speculative, it lacks an adequate factual foundation, and King lacks the requisite personal knowledge. This contention is also irrelevant and immaterial to the issues presented in this motion for the all the reasons discussed, *supra*, ¶ 5.

7.      Paragraphs 7 through 11 discuss several different copies of the Motion to Appoint a Special Prosecutor. Two different copies exist with an authentication stamp of July 21, 2015. This is apparently the same day the Order was entered *nunc pro tunc* July 16, 2015. No criminal action against King existed as of July 16, 2015. A copy of this Order appointing Mr. Doucette as

14

Special Prosecutor was filed with the Circuit Court on September 24, 2015. King does not, and cannot, articulate the relevance of the fact that different facsimiles of the same motion and Order exist. Obviously, two copies of the Motion were date stamped by the court, and ultimately disseminated to Watson and Doucette.

13.     King contends, "The accounts of Watson and Allen contradict each other as to how the complaint of Election Fraud was made." However, the essential, material facts are not inconsistent. Both Watson and Allen concur that the two first met at Logan's Diner; and that Allen initiated a complaint against King. These are the essential facts. Allen apparently recalls that he made the complaint at Logan's Diner; Watson recalls a discussion initiated by Allen at the diner, followed by a phone call from Allen to Watson sometime later. Watson has contemporaneous phone notes to corroborate the latter account. King does not dispute the essential fact that Allen made the complaint to Commonwealth's Attorney Watson. The identified discrepancy is immaterial.

15.     Paragraphs 15 through 19 challenge Doucette's declaration. First, King argues that Doucette is incorrect in his assertion that he received an audio recording of the King interview from Darden on July 24, 2015. He cites a September 16, 2015 letter from Doucette to King's defense counsel in which Doucette states that he did not know about Darden's recorded interview with King as of that date. It is unclear whether Doucette's account in the letter or his recent recollection following his review of the file is accurate. Regardless, King has failed entirely to show why the timing of Doucette's receipt of the audio recording is material. King contends that he told Darden about the March 2013 lease during that interview, and that *this* fact was material. But King told Darden that he moved *back* to North Carolina in "Mid-2013," after the lease was executed, and King voted in North Carolina as a resident on November 4, 2014. King has admitted

in court filings that he was a "resident" of North Carolina at least as recently as September 17, 2014. (Watson's Ex. A, at 35:22–36:2, 72:12–19; Ex. D.) King does not contend that he reestablished residence in Virginia until October 2014. Thus, the existence or non-existence of a March 2013 lease is immaterial to the question of whether King resided in Virginia one year prior to November 3, 2015. Whether Darden delivered the audio tape to Doucette on July 24, 2015; whether he received it from Lt. Tynes as part of the July 22, 2015 package; or whether he received it sometime thereafter is therefore irrelevant and immaterial.

Similarly, whether the Bing map appeared on page 93 or 128 of the Preliminary Hearing transcript is immaterial. The transcript bears Bates Numbers originating from the undersigned counsel's law firm. While there are several, likely explanations for why the Bing map appears at the end of the document, none of them involve perjury, as King insinuates. Again, King has not identified any matter of consequence to the issues pending before this Court.

20.     Paragraphs 20 through 22 fault Darden for not conducting a "rebuttal interview." King has offered no standard of care testimony or legal authority stating that Darden is under any compulsion to interview a suspect a second time before bringing charges. Watson hereby incorporates her objections to King Exhibit No. 27 by reference, *supra*, at 12.

25.     Whether King resumed his residency sometime in October 2014 is a disputed fact that is immaterial. The discovery record is not at all clear as to when King relocated to Virginia. King's actions reflect that he may have been a resident of North Carolina as late as May 2015. However, the precise date that King relocated to Virginia is not a factual issue raised in this motion. The issue is probable cause, i.e. whether the information presented to Darden as of July 24, 2015 supported an objectively reasonable inference that King had committed election fraud. Thus, King's self-serving assertion in this lawsuit that he relocated to Virginia on October 5, 2014 is

immaterial and irrelevant. Significantly, King cites no evidence from the discovery record in support of this proposition. To the contrary, King contradicted this claim in his recorded interview with Darden. His father failed to corroborate King's story. King's own conduct is entirely inconsistent with someone who had resumed residency in Virginia in October 2014.

31.     Paragraphs 31 and 32 concern Darden's phone interview of Charles King. As previously discussed, the duration of the phone conversation is immaterial and irrelevant. King states—without elaboration—that his father, Charles King, "corroborated King's statements regarding his residency." No evidence is cited in support of this proposition. To the contrary, the unrebutted testimony of Darden is that King failed to corroborate King's claim that he relocated to Virginia in October 2014. (Watson's Ex. I, at 45:18–46:17.)

33.     Watson denies that the March 2013 lease is exculpatory or relevant to the issues in this case for the reasons articulated, *supra*, ¶ 15.

34.     In response to Paragraph 34, Watson incorporates her objections to King Exhibit No. 23, *supra*, at 11.

37.     King has identified numerous, immaterial discrepancies regarding the various documents that Darden relied upon in forming her belief that probable cause existed to arrest King. Paragraph 37 asserts in a conclusory fashion that Darden "ignored pieces of obvious evidence that could not have made sense to an investigator." King does not elaborate. He also fails to cite even a scintilla of evidence that supports this proposition.

38.     In response to Paragraph 38, Watson incorporates and relies upon her objection to Exhibit No. 27, *supra*, at 12.

IV.     **Objections and Responses to Novel Factual Issues and Exhibits Appearing in King's Opposition to Watson's Motion for Summary Judgment (ECF Nos. 61 & 61-1 through 61-18)**

   a.   **Objection to the "recorded interviews" with certain, unidentified members of the Greensville County Electoral Board**

On February 25, 2019, King requested leave to take the depositions of Norris Dickerson, Wayne Legrow, and Robert Gizzard out of time. (ECF No. 43.) On March 5, 2019, this Court granted the motion. (ECF No. 51.) King was provided until March 14, 2019 to conduct the depositions, and he was granted an additional seven (7) days to file his opposition to Watson and Darden's motions for summary judgment.

King did not act on this Court's Order. Not only were no depositions conducted, King's counsel did not communicate with Watson's counsel for purposes of scheduling or discussing these depositions. No dates or times were ever proposed for these depositions. No deposition notices or deposition subpoenas were issued for these witnesses.

In his opposition brief, ECF No. 61, at 9, King asserts that "[t]he undersigned counsel made attempts to set the depositions however could not find a Court Reporting company, which could be present on March 13, 2015 [sic] the only date that was compatible." These claims come as a surprise to Watson's counsel, as we had not heard from King's counsel regarding those depositions. It is also regrettable that King did not try to engage with Watson's counsel regarding these depositions, because Watson's counsel is certain that a court reporter could have been secured for March 13, 2019.

King now claims to have obtained *ex parte* recorded phone interviews with two members of the local electoral board. As of this writing, King has not provided a copy of these alleged recordings to Watson's counsel, and so Watson has no idea what those recordings contain. Regardless, Watson objects to this *ex parte* evidence for several reasons. First, those recordings

18

are hearsay, and their authenticity is disputed. <u>Second</u>, those witnesses have not been sworn, or to the extent they have been sworn, the oath cannot properly be administered by phone or by plaintiff's counsel. <u>Third</u>, Plaintiff's counsel was not given leave to conduct *ex parte* phone interviews of witnesses. Discovery was closed as of March 13, 2019, and therefore this evidence—which still has not been provided to counsel—is out of time. <u>Fourth</u>, if those recordings do not manifest consent to be recorded, they are per se inadmissible under both the Virginia and federal intercepted communications laws. 18 U.S.C. § 2515; Va. Code Ann. § 19.2-65. <u>Fifth</u>, to the extent that King offers these recordings to rebut Watson's email statement that the electoral board "punted" to her, the recordings are irrelevant and immaterial to the issues presented in Watson's motion for summary judgment; namely, probable cause, causation, common law persecutorial immunity, and qualified immunity.

### b.   Objections to King's Exhibits (ECF No. 61-1 through -18)

Exhibit 1 to ECF No. 61 corresponds to Exhibit 24 to ECF No. 55. Exhibits 4 and 5 of King's opposition to Watson's motion correspond to Exhibits 5 and 6 to King's opposition to Darden's motion. Watson incorporates her objections to those exhibits by reference.

### c.   Objection to King's "Introduction" (ECF No. 61, at 4–6)

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 320 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The "Introduction" to King's motion contains a detailed factual narrative that is supported only by citations to the Second Amended Complaint. This section should be ignored by the Court in considering whether summary judgment is appropriate, because these facts are not properly supported under Rule 56.

## V.      Conclusion

For the foregoing reasons, the Defendants ask this Court to award summary judgment to Watson; to dismiss her from this action; and for such further relief as this Court deems just and appropriate.

**Date:** March 25, 2019                                    PATRICIA C. WATSON

                                                                            By: ____/s/ Michael G. Matheson_____
                                                                                           Counsel

                                                                            William W. Tunner (VSB No. 38358)
                                                                            Michael G. Matheson (VSB No. 82391)
                                                                            *Thompson*McMullan, P.C.
                                                                            100 Shockoe Slip, 3rd Floor
                                                                            Richmond, Virginia 23219
                                                                            Tel: (804) 649-7545
                                                                            Fax: (804) 780-1813
                                                                            wtunner@t-mlaw.com
                                                                            mmatheson@t-mlaw.com

                                                                            *Counsel for Patricia C. Watson*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2019 a copy of the foregoing was filed via the CM/ECF

system, and that a Notice of Electronic Filing (NEF) was thereby sent to the following counsel of

record:

Joseph F. Grove, Esq.
Joseph F. Grove, P.C.
9097 Atlee Station Road, Suite 116
Mechanicsville, VA 23116
*Counsel for Stephen King*

Erin R. McNeill, Esq.
Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
*Counsel for Kimberly L. Darden*

                                           /s/ Michael G. Matheson
                             William W. Tunner (VSB No. 38358)
                             Michael G. Matheson (VSB No. 82391)
                             *Thompson*McMullan, P.C.
                             100 Shockoe Slip, 3rd Floor
                             Richmond, Virginia 23219
                             Tel: (804) 649-7545
                             Fax: (804) 780-1813
                             wtunner@t-mlaw.com
                             mmatheson@t-mlaw.com

                             *Counsel for Patricia C. Watson*