IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEPHEN E. KING,
        Plaintiff,

v.                                                                  Civil Action No. 3:17-cv-742-JAG

KIMBERLY L. DARDEN, et al.,
        Defendants.

## OPINION

In this § 1983 suit, the plaintiff, Stephen King, alleges that the defendants conspired to unlawfully arrest and prosecute him for engaging in election fraud by submitting false information in connection with his candidacy for sheriff. The defendants—Patricia Watson, the Commonwealth's Attorney for Greensville County and the City of Emporia, Virginia, and Special Agent Kimberly Darden of the Virginia State Police—have moved for summary judgment. Because King fails to establish all elements of his claims, the Court will grant the defendants' motions.

## I. BACKGROUND

The events giving rise to this case began with the robbery of King's grocery store in Emporia, Virginia, in 2014. At the time of the robbery, King lived at his father's farm in Gaston, North Carolina, where he had lived since at least 2006.[1] Police arrested four suspects in connection with the robbery, one of whom lived across the road from King's father's farm. Watson's office handled the prosecution. On February 27, 2015, the Greensville County General District Court held a preliminary hearing in which King testified, "I live right across the road

---

[1] For a few months in 2013, King lived at his father's home in Emporia.

from one of the co-defendants." (Dk. No. 47, at 13; Dk. No. 49, at 4; Dk. No. 55-6, at 94:7-8.) The parties agree that King's testimony refers to his residence at the farm.

A few months before the preliminary hearing, relatives of one of the robbery suspects pressed trespass charges against King in North Carolina, which resulted in a criminal prosecution. To defend against the charges, King's counsel requested that two Greensville County Sheriff's deputies—officers who participated in the robbery investigation—testify on King's behalf. Watson, however, told King's counsel that those two officers could not testify because they had a scheduling conflict. The prosecution eventually dropped the trespass charges against King.

Convinced that Watson lied to him about the availability of the two deputies,[2] King confronted Watson in her office in September, 2014. King told Watson that he planned to file a complaint against her with the Virginia State Bar.[3] The Virginia State Bar ultimately dismissed King's complaint. King had no further dealings with Watson until this litigation.

In October, 2014, King moved from his father's farm in North Carolina to his father's home in Emporia. On November 4, 2014, however, King voted in person in the Northampton County, North Carolina general election. Before an individual can cast his vote in North Carolina, he must complete an Authorization to Vote ("ATV") form. The ATV form lists the

---

[2] According to King, on the day he had to appear in court for the trespass case, he drove by the home of one of the deputies while on his way to the North Carolina courthouse and noticed that the deputy's patrol car was in the driveway. Later that day, King again drove by the same deputy's home and noticed the patrol car still parked in the driveway. King submitted a Freedom of Information Act ("FOIA") request for the video camera footage of the entrance of the Virginia courthouse where the two deputies were supposed to have testified. The footage, King contends, shows that one of the deputies entered the courthouse and left less than two hours later and that the other deputy never appeared at the courthouse.

[3] King says that he visited Watson's office twice—once before he watched the courthouse video camera footage and once after. Watson only recalls one visit and does not recall King's threat to bring a bar complaint against her. These factual disputes, however, are not material to King's claims.

address associated with the voter's registration. The voter must certify that the address listed on the ATV form remains the voter's current address and that the voter has not moved from that address. If the voter no longer lives at the address appearing on the ATV form, he must list his current address. Just before the signature line, the ATV form provides,

> I hereby certify the address above is where I currently live or is corrected below. I understand that, if I have moved from this address more than 30 days ago, it is a violation of NC law to claim my old address as my voting address.

(Dk. No. 47-19, at 1; Dk. No. 49-2, at 40.) King's ATV form listed a Gaston, North Carolina address. King signed the ATV form without listing a new address, thereby certifying that the North Carolina address listed was his current address. King, however, told the poll worker that he was in the process of moving.

On June 8, 2015, King declared his candidacy for sheriff of Greensville County. Under Virginia law, candidates for public office must be eligible to vote for that office and must have been a resident of the Commonwealth for at least one year immediately preceding the election. Va. Code Ann. § 24.2-500. Additionally, candidates must file a Declaration of Candidacy and a Certificate of Candidate Qualification. On the Certificate, candidates must affirm under penalty of perjury that they satisfy the eligibility requirements. Willfully providing false information on the Certificate constitutes election fraud—a Class 5 felony offense. *Id.* § 24.2-1016. Thus, because the election occurred on November 3, 2015, Virginia law required King to reside in Virginia since November 3, 2014. *See id.* § 24.2-500.

Shortly after King announced his candidacy for sheriff, Watson received a complaint from Henry Stephen Allen, a Greensville County resident and Watson's second cousin, that King did not qualify to run for sheriff because he was a resident of North Carolina, not Virginia. In

response to the complaint, Watson sent a letter to Captain Reibel of the Virginia State Police (the "VSP"), requesting that the VSP investigate the matter.

On July 7 and 8, 2015, Watson emailed Michael Doucette, the Commonwealth's Attorney for Lynchburg County, Virginia, stating that "[a] citizen from [Greensville] [C]ounty complained" to her about King's eligibility to run for sheriff and that she "need[ed] a special prosecutor to handle [the] investigation and [bring any] potential charges." (Dk. No. 47-11, at 2; Dk. No. 55-3, at 2.) Watson explained that because King was a "victim in a robbery case" that her office had handled, she felt that "someone outside of this area should look at it with fresh eyes and make the call."[4] (Dk. No. 47-11, at 2; Dk. No. 55-3, at 2.) The Greensville County Circuit Court appointed Doucette as special prosecutor in mid-July.

On July 10, Reibel received Watson's letter and assigned Special Agent Kimberly Darden to investigate King. On July 14, Darden visited Watson's office to discuss the investigation. During the meeting, Watson identified Allen as the complainant and told Darden that Doucette would be handling the case as special prosecutor. Watson did not tell Darden or Doucette that Allen was her second cousin. Watson provided Allen's contact information, blank copies of a Certificate of Candidate Qualification form and a Declaration of Candidacy form, and a public record of King's North Carolina voting history from the North Carolina State Board of Elections website. King's North Carolina public voter information showed that King voted in person in the 2014 North Carolina election.

---

[4] In the letter sent to the VSP and in the email correspondence with Doucette, Watson incorrectly stated that the one-year Virginia residency requirement must be met at the *time of filing* to run for office, instead of the *date of the election*. Doucette realized the error and clarified that the one-year residency requirement relates to the date of the election, not the date of filing. No evidence suggests that this misstatement affected the investigation or ultimate decision to prosecute King, so Watson's misstatement does not alter the Court's analysis.

4

During her investigation, Darden interviewed Dorothy Kea, the Greensville County Registrar. Kea provided copies of King's signed Certificate of Candidate Qualification and Declaration of Candidacy forms. Kea also provided proof that King registered his vehicle with the Virginia Department of Motor Vehicles—and at the same time, registered to vote in Virginia—on May 22, 2015. Darden also interviewed Susie Squire, the Board of Elections Director for Northampton County. Squire provided Darden with a copy of King's ATV form relating to the 2014 North Carolina election. Finally, Darden interviewed King and his father. Both said that King had moved back to Emporia before November, 2014.[5]

Additionally, Darden obtained an Accurint[6] report for King, which listed King's father's farm in Gaston as his "most possible current residen[ce]." (Dk. No. 47, at 12 (alteration in original).) She also printed King's public voting history from the North Carolina State Board of Elections website, verifying the information that Darden received from Watson and Squire. King does not dispute the authenticity or accuracy of that information. On July 22, Darden concluded her investigation and gave the information she found to Doucette.

Doucette and Darden met on July 24 to discuss Darden's findings. Believing that the ATV form alone constituted probable cause that King committed election fraud, Doucette instructed Darden to seek an arrest warrant for King. When she applied for the arrest warrant, Darden told the magistrate that King voted in the 2014 North Carolina election. Darden also submitted a criminal complaint, which stated, "Investigation revealed Accused has not been a resident of Virginia since [November 3, 2014]. Therefore #3 on the Certificate of Candidate

---

[5] King also told Darden that he had a lease agreement with his father dated March, 2013, and that the Virginia Alcoholic Beverage Control Authority ("ABC") would have a copy of that agreement because his father's residence was the listed address for King's grocery store's ABC license. Darden never verified this information with the Virginia ABC.

[6] Accurint is an investigative public records research tool that police use to find addresses and contact information.

5

Qualification, Local Offices, for Greensville, Virginia, is a false statement of 'Yes.'" (Dk. No. 47-23, at 1.) After the magistrate issued the warrant, police arrested King.

At a preliminary hearing on September 14, a Greensville County General District Court agreed that probable cause existed and certified the felony charge to the grand jury. On October 6, VSP Special Agent Donald Glenn presented the felony charge to the Greensville County Grand Jury, which returned a true bill of indictment.[7] After a trial on November 6, a jury found King not guilty.

King filed this action against Darden, Watson, and Allen, alleging malicious prosecution and false arrest in violation of the Fourth Amendment and malicious prosecution and false imprisonment under Virginia law. The defendants moved to dismiss. The Court granted Allen's motion, dismissing him from the suit. The Court granted Darden and Watson's motions to dismiss with respect to the false arrest and false imprisonment charges, but granted King leave to amend. The Court, however, denied Darden and Watson's motions to dismiss with respect to the Fourth Amendment and Virginia malicious prosecution claims. King filed a second amended complaint. The defendants have moved for summary judgment on all remaining claims.

---

[7] Darden was not present at the grand jury proceedings, and the record does not indicate what evidence Glenn presented to the grand jury.

## II. DISCUSSION[8]

### A. Malicious Prosecution Under § 1983 and Under Virginia Law

To succeed on a malicious prosecution claim under § 1983,[9] a plaintiff must prove "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In an action for malicious prosecution under Virginia law, a "plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 281 Va. 715, 722, 708 S.E.2d 884, 889 (2011). Both claims require King to prove a lack of probable cause. Because probable cause existed to prosecute King, the Court will grant summary judgment in favor of the defendants as to both malicious prosecution claims.

The necessary factual predicates for probable cause under federal law and Virginia law are essentially the same. Under federal law, probable cause arises "when the facts and

---

[8] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[9] Section 1983 permits a plaintiff to sue any "person who, under color of" law, violated the plaintiff's federal constitutional rights. 42 U.S.C. § 1983. Here, Watson and Darden do not dispute that they acted under color of law during all relevant times. Thus, to succeed on his § 1983 claims on summary judgment, King must demonstrate that the defendants violated his constitutional rights. *See id.* Courts analyze § 1983 false arrest and malicious prosecution claims under the Fourth Amendment's reasonableness standard. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (noting that a § 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure"); *Brown v. Gilmore*, 278 F.3d 362, 367-68 (4th Cir. 2002) (analyzing a false arrest claim under the Fourth Amendment).

circumstances known to the officer 'would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (quoting *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988)). Under Virginia common law, "probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Stanley v. Webber*, 260 Va. 90, 96, 531 S.E.2d 311, 314 (2000). Courts gauge probable cause by the facts known to the officer at the time of the arrest. *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995); *Howard v. Commonwealth*, 210 Va. 674, 678, 173 S.E.2d 829, 833 (1970).

Although a jury ultimately acquitted King of election fraud, "[t]he fact that [he] was acquitted . . . does not alter the determination as to whether probable cause existed at the time of arrest." *Kelly v. Bencheck*, 1997 WL 76041, at *2 (4th Cir. Feb. 24, 1997). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (alteration in original).

Here, "the totality of the circumstances known" to law enforcement shows that probable cause existed to prosecute King. *See Al-Talib*, 55 F.3d at 931. When King filled out the Certificate for Candidacy Qualification, he certified that he had been a resident of the Commonwealth since at least November 3, 2014—exactly one year preceding the election. The ATV form and King's public voting record, however, show that on November 4, 2014—the day after which he supposedly had been a resident of the Commonwealth—King voted in the 2014 North Carolina election, and certified that the North Carolina address listed on the ATV form was his current address and that he had not moved from that address in the last thirty days.

8

King's signed certification that he remained a North Carolina resident as of November 4, 2014, alone provided probable cause that King committed election fraud.[10] *See* Va. Code Ann. § 24.2-500 (requiring that candidates for public office be eligible to vote for that office and live in the Commonwealth for at least one year immediately preceding the election); *id.* § 24.2-1016 (making it a Class 5 felony to willfully provide false information on the Certificate).

Moreover, Darden had additional evidence supporting the probable cause determination. The transcript from the robbery case shows that King testified at the 2015 preliminary hearing, "I live" in North Carolina. (Dk. No. 47, at 13; Dk. No. 49, at 4; Dk. No. 55-6, at 94:7-8.) Because King used the present tense "live" when testifying at the 2015 preliminary hearing (*after* King supposedly had been a resident of Virginia), a reasonable interpretation of King's testimony is that King meant that he lived at his father's farm in North Carolina at the time of the hearing. The Accurint report, which Darden obtained in mid-2015 and listed King's father's farm in Gaston, North Carolina, as King's "most possible current residen[ce]," (Dk. No. 47, at 12 (alteration in original)) bolsters this interpretation. Taken together, "the facts and circumstances known" to the defendants "would warrant the belief of a prudent person" that King had committed election fraud. *Taylor*, 81 F.3d at 434.

King raises a number of factual disputes, but these disputes are not material to the probable cause analysis.[11] For example, King points out that an aerial depiction of King's

---

[10] King also claims that when he voted in the 2014 North Carolina election, he told the Northampton poll worker that he was in the process of moving. That assertion, however, does not undermine the probable cause determination, particularly in light of King's failure to list a new address on the ATV form.

[11] King also argues that Darden should have conducted a more thorough investigation. An officer, however, need not "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinksy v. Siwinksi*, 942 F.2d 257, 264 (4th Cir. 1991); *Lewis*, 281 Va. at 724, 708 S.E.2d at 890 (noting that an officer's failure to investigate further does not invalidate an arrest pursuant to a facially valid warrant).

father's farm in North Carolina was shuffled into the preliminary hearing transcript from the robbery trial—a depiction that was not in the original transcript. But how the aerial map found its way into the transcript is irrelevant to the information giving rise to probable cause, and King does not contend that his testimony reflected in the transcript is inaccurate. Because probable cause existed that King committed election fraud, King's malicious prosecution claims must fail. Consequently, the Court need not address the defendants' causation arguments or immunity claims.

### B. False Arrest Under § 1983 and False Imprisonment Under Virginia Law

Nearly identical principles govern claims for false arrest under the Fourth Amendment and for false imprisonment under Virginia law. An arrest pursuant to a facially valid warrant, even when probable cause does not support the warrant, precludes both claims. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (holding that public officials who make an arrest pursuant to a "facially valid warrant" are not liable for false arrest under § 1983, regardless of the probable cause determination); *Montanile v. Botticelli*, No. 1:08-cv-716, 2008 WL 5101775, at *5 (E.D. Va. Nov. 25, 2008) (citing *Cole v. Eckerd Corp.*, No. L00-2243, 2000 WL 33595085, at *3 (Va. Cir. Ct. Dec. 20, 2000)) (noting that under Virginia law, "the issuance of a regular warrant, even if it was procured without probable cause, precludes a charge of false imprisonment"). In other words, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." *Dorn v. Town of Prosperity*, 375 F. App'x 284, 285-86 (4th Cir. 2010) ("The distinction between malicious prosecution and false arrest . . . is whether the arrest was made pursuant to a warrant.").

---

Once Darden collected sufficient evidence to establish probable cause, she had no duty to continue investigating to establish King's innocence.

In the Court's Opinion granting in part the defendants' motions to dismiss, the Court explained that King failed to allege facts supporting either a § 1983 false arrest claim or Virginia false imprisonment claim. Specifically, the Court noted that "King d[id] not challenge that officers arrested him with a warrant . . . and d[id] not challenge its facial validity." (Dk. No. 31, at 6.) The Court scrutinized the warrant and found no errors. Nonetheless, the Court granted King leave to amend his complaint as to those two claims.

The defendants now have moved for summary judgment on King's false arrest and false imprisonment claims. To succeed on his claims for false arrest under § 1983 and for false imprisonment under Virginia law, King must establish that he was not arrested pursuant to a facially valid warrant. *See Porterfield*, 156 F.3d at 568; *Montanile*, 2008 WL 5101775, at *4. He has not done so.

On July 24, 2015, Darden appeared before a magistrate to apply for an arrest warrant. She told the magistrate that King voted in the 2014 North Carolina election and submitted a criminal complaint, which stated, "Investigation revealed Accused has not been a resident of Virginia since [November 3, 2014]. Therefore #3 on the Certificate of Candidate Qualification, Local Offices, for Greensville, Virginia, is a false statement of 'Yes.'" (Dk. No. 47-23, at 1.) The magistrate agreed that probable cause existed for King's arrest, and issued a felony arrest warrant. The warrant identified section 24.2-1016 of the Code of Virginia as the source of the violation. Special Agent Garrett Giusto of the VSP arrested King pursuant to the warrant on July 28, 2015. King has not identified anything improper about the warrant process.

Because King has submitted no evidence to show that he was not arrested pursuant to a facially valid warrant, King's claims for false arrest and false imprisonment must fail. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996) (noting that "allegations

that a *warrantless* arrest or imprisonment was not supported by probable cause advanced a claim of false arrest or imprisonment," but that "allegations that an arrest made *pursuant to a warrant* was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution" (emphasis added)); *see also Porterfield*, 156 F.3d at 568 ("[A] claim for false arrest may be considered only when no arrest warrant has been obtained."). The Court, therefore, will grant summary judgment in the defendants' favor as to the false arrest and false imprisonment claims.

### III. CONCLUSION

For the reasons set forth above, the Court will grant the defendants' motions for summary judgment on all claims.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 April 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge